IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

PHILLIP ANGEL GARCIA,

    Plaintiff,

v.                                                           No. 22-cv-789-DHU-SCY

BERNALILLO COUNTY
METROPOLITAN DETENTION
CENTER, BOARD OF COMMISSIONERS
OF BERNALILLO COUNTY,
MEDICAL CONTRACTOR FOR
THE DETENTION CENTER,
BERNALILLO COUNTY SHERIFF'S
DEPARTMENT,

    Defendants.

## MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court on Plaintiff Phillip Angel Garcia's prisoner's Civil Rights Complaint, filed October 21, 2022. (Doc. 1) (the "Complaint"). Also before the Court are Plaintiff's Motion for Entry of Judgment (Doc. 5), Motion to Appoint Counsel (Doc. 7), Motion for Court Order to Release Plaintiff (Doc. 8), Motion to Compel Discovery (Doc. 9), and Motion for Order to Provide Medical Assistance as to Pancreatic Cancer (Doc. 14). Garcia is a pretrial detainee in the custody of the Bernalillo County Metropolitan Detention Center. He is proceeding pro se and in forma pauperis. Pursuant to the screening requirement of 28 U.S.C. § 1915A, the Court will dismiss the Complaint for failure to state a claim upon which relief can be granted. Garcia will be granted an opportunity to file a second amended civil rights complaint. The pending motions are not well taken and shall be denied.

    I.       Facts.

For the limited purpose of screening the Complaint, the Court assumes the following allegations of fact, taken from the Complaint, are true.

Garcia was arrested by the Bernalillo County Sheriff's Department in August 2022. (Doc. 1 at 1). During the arrest, he was bitten by a police dog. (Id.). Before taking him to jail, the arresting officers brought him to Lovelace Medical Center where his dog bite injuries were treated. (Id.). When he was released by the hospital, he was booked into the Bernalillo County Metropolitan Detention Center ("MDC"). (Id.). Garcia immediately advised MDC's medical staff of his injuries. (Id.). Garcia appears to allege that medical staff treated his wounds during his intake process. (Id.). Thereafter, medical staff went to his cell twice a day to provide drug detox medications. (Id.). During each of these visits, Garcia advised the attending nurses of pain in his right wrist where the worst of the dog bite injuries was. (Id.). The nurses allegedly told him that his pain was caused by detoxing. (Id.). Garcia disagreed, and he would show the nurses his wrist wound, which worsened daily as it became infected and enlarged.  (Id. at 2). The nurses allegedly always responded in the same way, telling Garcia that the problem was in his head and that the was only seeking attention and drugs to get high.  (Id.). The allegations in the Complaint do not identify the individual nurses, nor are they named as defendants.

About four days after his arrest, a blood draw doctor, Dr. Terrance, and Mrs. Veronica, a nurse (apparently a different nurse from those who provided detox medications), visited Garcia so they could do a blood draw related to his pancreatic cancer. (Id.). The blood draw was unsuccessful, and Garcia advised Dr. Terrance and Mrs. Veronica that he was dehydrated because the infection in his wrist made it impossible for him to eat. (Id.). Dr. Terrance notified the nurse in charge (apparently the MDC nurse), and Garcia was taken to MDC's medical unit. (Id.). There, the nurse (also unnamed) applied cream to Garcia's wound, wrapped his arm, and allegedly told

him to "stop being a cry baby and stop wasting medical's time, [and] that [he] was not dying." (Id.).

The next day, Dr. Terrance and Mrs. Veronica visited Garcia again for a blood draw. Again, it was unsuccessful. (Id.). Garcia told Dr. Terrance about the severe pain in his wrist and removed the wrap, showing him and Mrs. Veronica the dog bite wound. (Id.). This caused the infection to open which, in turn caused blood, pus, and fatty tissue to ooze out, revealing visible muscle and bone. (Id.). Dr. Terrance and Mrs. Veronica, along with corrections officer Chavez agreed to take him directly to medical, from where Dr. Terrance got approval to transport Garcia to the University of New Mexico Hospital ("UNMH"). (Id.). The UNMH doctors allegedly found that due to a lack of medical attention, the infection in Garcia's wrist had become sceptic and required surgery. (Id. at 3).

Four days later, a preliminary hearing was held in state court pertaining to the charges for which Garcia was arrested. (Id. at 3). Multiple officers from the Bernalillo County Sheriff's Office testified at the hearing. (Id.). Garcia alleges that the officers denied the severity of the police dog attack and swore that the dog had only bitten Garcia on the foot. (Id.). During the preliminary hearing, Garcia was charged with animal cruelty and two misdemeanor offenses in addition to the shoplifting charges that were pending already. (Id.). Garcia alleges that the UNMH medical reports show clearly that he had dog bite marks all over his body, including the severe one on his right wrist. (Id.).

Based on the foregoing, Garcia seeks to state a claim of deliberate indifference to medical needs in violation of the Eighth Amendment to the United States Constitution, apparently against MDC, the Board of County Commissioners of Bernalillo County, and the medical contractor for MDC. (Id. at 1). He also seeks to state claims against the Bernalillo County Sheriff's Department

for malicious prosecution for charging him with animal cruelty and two additional misdemeanors and excessive use of force. (Id.). Although it is not clear, Garcia may also seek to state claims against the arresting officers under the tort theories of battery and malicious prosecution.

    II.    <u>Analysis</u>.

    A.  <u>Pleading Standards Governing a § 1983 Claim</u>.

42 U.S.C. § 1983 provides a vehicle for the vindication of substantive rights guaranteed by the Constitution and laws of the United States. It allows a person whose federal rights have been violated by state or local officials "acting under color of state law" to sue those officials. *Id.* A § 1983 claim is comprised of two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988); *McLaughlin v. Bd. of Trustees of State Colls. of Colo.*, 215 F.3d 1168, 1172 (10th Cir. 2000). To state a viable claim a plaintiff must allege that each government official, through the official's own individual actions, has violated his Constitutional rights. *See Trask v. Franco*, 446 F.3d 1036, 1046 (10th Cir. 1998). There must also be a connection between the official conduct and the Constitutional violation. *See Fogarty v. Gallegos*, 523 F.3d 1147, 1162 (10th Cir. 2008); *Trask*, 446 F.3d at 1046. To state a § 1983 claim, the complaint must clearly identify "exactly *who* is alleged to have done *what* to *whom*" so that each defendant has notice of the basis of the claims against them, particularly. *Robbins v. Okla.*, 519 F.3d 1242, 1250 (10th Cir. 2008).

    B.  <u>The Complaint Does Not State a Viable § 1983 Claim Against Any Defendant</u>.

    1.    <u>§ 1983 Does not Allow Vicarious Liability Claims against Government Entities</u>.

To the extent Garcia seeks to state a claim against the Bernalillo County Sheriff's Department, Bernalillo County Board of Commissioners, or MDC's unnamed medical contractor

for the alleged actions of its employees, the claim fails as a matter of law. It is well established that a county (or a municipality) cannot 'be held liable solely because it employs a tortfeasor—or, in other words, [it] cannot be held liable under § 1983 on a respondeat superior theory.' *Monell v. Dep't of Social Servs. of City of New York*, 436 U.S. 658, 691 (1978). "Rather, municipalities are subject to liability [under § 1983] only for their official policies or customs." *Starrett v. Wadley*, 876 F.2d 808, 818 (10th Cir. 1989); *see Monell*, 436 U.S. at 694 ('[I]t is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.'). The *Monell* standard applies equally to claims against a sheriff's department, which are cognizable under § 1983 only as claims against the county itself, *Moore v. Diggins*, 633 F. App'x 672, 677 (10th Cir. 2015), and to private companies, such as medical providers, that governmental entities hire to perform services in their stead. *Carr v. El Paso Cnty., Colorado*, 757 F. App'x 651, 655 (10th Cir. 2018).

Garcia has not alleged that an existing policy or custom established or sanctioned by the Bernalillo County Board of Commissioners, MDC's medical contractor, or the Bernalillo County Sheriff's Department caused the Constitutional deprivations alleged in the Complaint. The claims against these defendants must therefore be dismissed without prejudice for failure to state a claim.

2. <u>MDC is not a Suable Entity</u>.

Garcia's claims against MDC fail as a matter of law. It is well established that a "detention facility is not a person or legally created entity capable of being sued." *White v. Utah*, 5 F. App'x 852, 853 (10th Cir. 2001); *see Gaines v. U.S. Marshals Serv.*, 291 F. App'x 134, 135 (10th Cir. 2008) (a county detention center "is not a suable entity"). In the § 1983 context, "suing a detention facility is the equivalent of attempting to sue a building." *Gallegos v. Bernalillo Cnty. Bd. of Cnty.*

*Commr's*, 272 F. Supp. 3d 1256, 1267 (D.N.M. 2017). Any claims against MDC are dismissed with prejudice.

      3.      The Complaint Does Not Specify Who Did What to Whom.

To state a viable § 1983 claim against an individual defendant, a plaintiff must show how each government-official defendant, through his or her own individual actions violated the Constitution. *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). In other words, as stated earlier, he must identify "exactly *who* is alleged to have done *what* to *whom*[.]" *Robbins*, 519 F.3d at 1250. Although many of Garcia's allegations appear to support claims against individual state actors, the Complaint does not name individual defendants, nor does it specify individual conduct that violated his Constitutional rights.

      a.      The Deliberate Indifference Claim.

Since Garcia is a pretrial detainee, his deliberate indifference claim arises under the Fourteenth Amendment instead of the Eighth. *See Strain v. Regalado*, 977 F.3d 984, 987 (10th Cir. 2020) ("The Fourteenth Amendment prohibits deliberate indifference to a pretrial detainee's serious medical needs."). Despite this distinction, the pleading standards are identical. *See Quintana v. Santa Fe Cnty. Bd. of Comm'rs*, 973 F.3d 1022, 1028 (10th Cir. 2020) (The Tenth Circuit applies "the two-part Eighth Amendment inquiry when a pretrial detainee alleges deliberate indifference to serious medical needs."). A deliberate indifference claim is comprised of an objective and a subjective component. "The objective component is met if the deprivation is sufficiently serious" meaning it "has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the [need] for a doctor's attention." *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000). "The subjective component is met if a prison official knows of and disregards an excessive risk to inmate health or safety." *Id.*

Garcia's allegations show that various MDC "nurses" were subjectively aware of his objectively serious wrist infection and remained deliberately indifferent to it. But none of the nurses are named as defendants. Neither are they specifically identified, with their personal wrongful conduct described in the Complaint in a form that satisfies the "who-did-what-to-whom" pleading standard. This is fatal Garcia's deliberate indifference claim. *See Robbins*, 519 F.3d at 1250 (General references to a group of defendants, "with no distinction as to what acts are attributable to whom" will not suffice.)

If Garcia wishes to pursue a deliberate indifference claim against the nurses whose conduct appears to satisfy the objective and subjective components of a deliberate indifference claim, he should amend his complaint to name the individual nurses as defendants and amend his allegations to show their personal involvement. If Garcia is unable to provide their names, he may use "use unnamed [i.e., Jane or John Doe] defendants so long as [he] provides an adequate description of some kind which is sufficient to identify the person involved so process eventually can be served." *Roper v. Grayson*, 81 F.3d 124, 126 (10th Cir. 1996).

b. The Excessive Force Claim.

To state an excessive force claim under the Fourth Amendment, a plaintiff "must show *both* that a seizure occurred and that the seizure was unreasonable." *Thomas v. Durastanti*, 607 F.3d 655, 663 (10th Cir. 2010) (internal quotation marks omitted). "A court assesses the reasonableness of an officer's conduct from the perspective of a reasonable officer on the scene, acknowledging that the officer may be forced to make split-second judgments in certain difficult circumstances." *Marquez v. City of Albuquerque*, 399 F.3d 1216, 1220 (10th Cir. 2005). "Factors [considered] in assessing whether the force used was reasonable include: the alleged crime's

severity, the degree of potential threat that the suspect poses to an officer's safety and to others' safety, and the suspect's efforts to resist or evade arrest." *Id.*

Garcia's claim of excessive force appears to be based on injuries he incurred from the police dog. Aside from a description of Garcia's alleged injuries, the Complaint is practically devoid of allegations relevant to a claim of excessive force. None of the officers involved in arrest are identified as defendants and there are no allegations specifying any officer's personal involvement in the arrest, generally, or the use of force, specifically. Without facts pertaining to the circumstances of the arrest and addressing the reasonableness of the force used to effect it, Garcia's claim is vague and conclusory and, therefore, cannot survive review. *Spearman v. Collins*, 500 F. App'x 742, 744 (10th Cir. 2012) (Claims based on vague and conclusory allegations fail).

c. The Malicious Prosecution Claim.

A § 1983 malicious prosecution claim includes five elements: "(1) the defendant caused the plaintiff's continued confinement or prosecution; (2) the original action terminated in favor of the plaintiff; (3) no probable cause supported the arrest, confinement, or prosecution; (4) the defendant acted maliciously; and (5) the plaintiff sustained damages." *Shrum v. Cooke*, 60 F.4th 1304, 1310 (10th Cir. 2023). The allegations in the Complaint do not satisfy any of these elements. Further, as Plaintiff is a pretrial detainee, it appears that this claim would be premature.

C. Tort Claims.

The Court discerns that Garcia may also seek to state tort claims against the officers involved in his arrest. The state of New Mexico has waived sovereign immunity for specific torts as set forth in the New Mexico Tort Claims Act (NMTCA). NMSA 1978 §§ 41-4-4 through 41-4-12. Of relevance here, sovereign immunity does not apply to liability for personal injury or bodily injury resulting from battery or malicious prosecution/abuse of process when caused by law

enforcement officers while acting within the scope of their duties. NMSA 1978 § 41-4-12; *see Durham v. Guest*, 204 P.3d 19, 26 (N.M. 2009) (recognizing that "malicious prosecution and abuse of process [is now] . . . a single cause of action" in New Mexico tort law).

Under New Mexico tort law, to prevail on a malicious abuse of process claim a plaintiff must demonstrate "(1) the use of process in a judicial proceeding that would be improper in the regular prosecution or defense of a claim or charge; (2) a primary motive in the use of process to accomplish an illegitimate end; and (3) damages." *Durham*, 204 P.3d at 26. "An improper use of process may be shown by (1) filing a complaint without probable cause, or (2) an irregularity or impropriety suggesting extortion, delay, or harassment, or other conduct formerly actionable under the tort of abuse of process." *Id.* To prevail on a tort claim of battery, a plaintiff must demonstrate: (1) that a defendant committed an act intended to cause a harmful or offensive contact with the plaintiff, (2) that resulted in an offensive contact with the plaintiff. *Hernandez v. Parker*, 508 P.3d 947, 957 (N.M. Ct. App. 2022).

The allegations in the Complaint fail to state a viable tort claim. If Garcia wishes to state tort claims in an amended complaint, he should clearly identify the appropriate defendants, clarify the nature of the claims by stating that they are brought under the NMTCA, identify the law enforcement officers against whom the claims are asserted, address whether they were acting in the scope of their duty, and show how their conduct satisfies the elements of the claim asserted. He should also address the notice requirement set forth in NMSA 1978 § 41-4-16.

III.   Leave to Amend.

Generally, *pro se* plaintiffs should be given a reasonable opportunity to remedy defects in their pleadings. *Reynoldson v. Shillinger*, 907 F.2d 124, 126 (10th Cir. 1990). The opportunity to amend should be granted unless the amendment would be futile. *Hall*, 935 F.2d at 1109. Garcia

shall be granted a thirty-day deadline within which to file an amended complaint. If he declines to timely amend, the Court may dismiss the case with prejudice.

    IV.    <u>The Pending Motions</u>.

    A.    <u>The Motion for Entry of Judgment</u>.

In Plaintiff's Motion for Entry of Judgment (Doc. 5), Garcia asks this Court to quash the criminal charges pending against him in state court, arguing that there is insufficient evidence to support a prospective, potential conviction, that he has been denied reasonable bail, and claiming violations of his Constitutional right to a speedy trial. The motion will be denied without prejudice.

Typically, a federal court is not permitted to intervene in ongoing state criminal proceedings when adequate state relief is available. *Younger v. Harris*, 401 U.S. 37 (1971); *Walck v. Edmondson*, 472 F.3d 1227, 1232 (10th Cir. 2007) ("[U]nder *Younger* and its progeny, federal courts should not interrupt ongoing state criminal proceedings when adequate state relief is available."). Absent extraordinary circumstances, federal courts *must* abstain from intervening "when: (1) there is an ongoing state criminal, civil, or administrative proceeding, (2) the state court provides an adequate forum to hear the claims raised in the federal complaint, and (3) the state proceedings involve important state interests, matters which traditionally look to state law for their resolution or implicate separately articulated state policies." *Walck*, 472 F.3d at 1233. Garcia has not demonstrated the existence of extraordinary circumstances. The issues raised in his motion are inherent in the adjudication of criminal cases at the state level and should be pursued in state court.

    B.    <u>Motion to Appoint Counsel</u>.

Garcia's Motion to Appoint Counsel (Doc. 7) will also be denied without prejudice. "Courts are not authorized to appoint counsel in § 1983 cases; instead, courts can only 'request' an attorney to take the case." *Rachel v. Troutt*, 820 F.3d 390, 397 (10th Cir. 2016). The decision

to make this request is a matter of discretion. *Toevs v. Reid*, 685 F.3d 903, 916 (10th Cir. 2012). Factors guiding the Court's decision include "the merits of the claims, the nature of the claims, [the inmate's] ability to present the claims, and the complexity of the issues." *Rachel*, 820 F.3d at 397. Considering these factors, the Court will not take the extraordinary step of asking a local attorney to represent Garcia on a *pro bono* basis. His claims are not particularly complex, and the Court discerns that he is capable of prosecuting his case.

      C.      <u>Motion for Court Order to Release Plaintiff.</u>

In his Motion for Court Order to Release Plaintiff (Doc. 8), Garcia claims that he is being held in custody in violation of his Constitutional rights and seeks an order setting a reasonable bail and enforcing his right to a speedy trial. For reasons discussed above, the Court will not intervene in the state criminal proceedings. If Garcia believes he is being held in violation of his Constitutional rights, he may seek relief by filing a habeas petition under 28 U.S.C. § 2241. He is advised, however, a habeas petitioner seeking relief under § 2241 is generally required to exhaust state remedies prior to seeking federal habeas relief. The Court will not consider a request for habeas relief in the context of a civil rights lawsuit. *McIntosh v. U.S. Parole Comm'n*, 115 F.3d 809, 812 (10th Cir. 1997) (habeas relief may not be pursued in a civil rights case). The motion shall be denied without prejudice to Garcia's prerogative to pursue habeas relief under § 2241.

      D.      <u>Motion to Compel Discovery</u>.

Garcia's Motion to Compel Discovery (Doc. 9) shall be denied as premature. Prisoner suits are exempt from ordinary pretrial case management and discovery procedures. *See* D.N.M. LR-Civ. 16.3; D.N.M. LR-Civ. 26.3(a)(1). If Garcia files an amended complaint which survives screening, in lieu of traditional discovery, the Court may, if appropriate, order a *Martinez* report. *Hall v. Bellmon,* 935 F.2d 1106, 1109 (10th Cir. 1991). The *Martinez* report is "a court-authorized

investigation and report by prison officials" aimed at ferreting out "any factual or legal bases for [the] claims." *Hall v. Bellmon,* 935 F.2d 1106, 1109 (10th Cir. 1991). If a prisoner believes he or she needs additional information *after* the report is disclosed, the prisoner may submit a traditional discovery request. *See Abdulhaseeb v. Calbone,* 600 F.3d 1301, 1310 (10th Cir. 2010) (delaying "discovery pending an evaluation of the [*Martinez*] report [does not] constitute an abuse of discretion or impermissibly contravene[] the discovery provisions of the federal rules"). At this stage of the proceedings, there are no pending claims and therefore neither a *Martinez* report or traditional discovery is required.

   E.  Motion For Order to Provide Medical Assistance.

In his Motion for an Order to Provide Medical Assistance as to Pancreatic Cancer (Doc. 14), Garcia seeks an order requiring MDC staff to provide adequate cancer treatment. To the extent Garcia seeks injunctive or monetary relief for an alleged failure to provide adequate medical treatment, he should raise the claim in an amended complaint. If the claim survives screening, the appropriately named defendants will be required to answer and participate in the case. As it presently stands, however, there are no pending claims against any defendant. The Court does not have jurisdiction or authority to issue binding directives on the county entities or officials that are not parties in this lawsuit. The motion will therefore be denied.

   **IT IS ORDERED:**

   (1)  The claims set forth in the Complaint **(Doc. 1)** are **DISMISSED** without Prejudice.

   (2)  Garcia may file an amended civil rights complaint within thirty days of the entry of this Memorandum Opinion and Order. Failure to do so may result in dismissal of this case without further notice.

   (3)  Plaintiff's Motion for Entry of Judgment **(Doc. 5)** is **DENIED**.

  (4) Plaintiff's Motion to Appoint Counsel **(Doc. 7)** is **DENIED.**

  (5) The Motion for Court Order to Release Plaintiff **(Doc. 8)** is **DENIED.**

  (6) Plaintiff's Motion to Compel Discovery **(Doc. 9)** is **DENIED.**

  (7) Plaintiff's Motion for Order to Provide Medical Assistance as to Pancreatic Cancer **(Doc. 14)** is **DENIED**.

_____
UNITED STATES DISTRICT JUDGE